[No. B126944. Second Dist., Div. Three. Jan. 13, 1999.]

PATRICIA O., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Real Party in Interest.

## COUNSEL

Marilyn M. Mordetzky, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Randall Pacheco, Pamela Soncini and Lisa K. Rozzano for Minors.

Lloyd W. Pellman, County Counsel, Sterling Honea, Principal Deputy County Counsel; Auxiliary Legal Services and Lois Timnick for Real party in Interest.

## OPINION

**KLEIN, P. J.**—Petitioner Patricia O. (mother) seeks writ review (Welf. & Inst. Code, § 366.26, subd. (*l*); Cal. Rules of Court, rule 39.1B)[1] of respondent court's order denying mother family reunification services and setting a hearing under section 366.26 as to minors Salman Y. and Jasmine Y. on February 24, 1999. We deny the writ.

### FACTUAL AND PROCEDURAL BACKGROUND

The minors were declared wards of the court pursuant to section 300 based on a second amended petition which, as sustained, alleged: (1) the minors were in danger of serious physical harm in that their sibling, Adan Y., died on February 8, 1998, as a result of severe physical injuries including "blunt force trauma to the abdomen, disrupted blood vessels, lacerations and hemorrhaging of tissues, a torn liver, an abrasion on the left temple, and fractured vertebrae," and Adan previously had suffered a spiral fracture of the right humerus on July 27, 1997; (2) mother failed to protect the minors from mother's male companion, Victor Z., who had physically abused Salman and Jasmine by hitting the minors' buttocks with an open hand, twisting the minors' legs and arms, and, as to Salman, striking the minor in the abdomen with his fist; (3) the minors were inadequately supervised in December of 1997 or January of 1998 when Jasmine was found in the streets of Huntington Park by a Pacific Bell employee who took the minor to the home of the maternal aunt, and in October of 1997 when the maternal aunt found Salman "wandering in the streets of Huntington Park unsupervised and she almost accidentally hit him with her automobile"; (4) mother and Victor Z. had violent physical and verbal disputes in 1997 and on February 5, 1998, which endangered the minors' safety; and, (5) Victor Z. had endangered the minors by using marijuana in their presence and in their home.[2]

The application for petition dated February 9, 1998, prepared by the department of children and family services (DCFS) included a copy of a police report which indicated that on February 8, 1998, officers responded to a "baby not breathing call" at a laundromat on Florence Boulevard in Huntington Park. The officers found Adan Y. lying on a bench outside the laundromat and the minor's 34-year-old mother and her 22-year-old boyfriend, Victor Z., standing next to the bench. Adan Y. had no pulse and was pronounced dead at St. Francis Hospital.

---

[1]Subsequent unspecified statutory references are to the Welfare and Institutions Code.

[2]We adopt the spelling of the names of Salman and Adan, as well as the name of mother's male companion, Victor Z., as they appear in the second amended petition.

Mother told investigators she had separated from the minors' father approximately one year earlier, she had been dating Victor Z. for approximately eight months, and that Victor Z. had been residing with mother and the minors. Mother admitted she and Victor Z. had argued several times, had struck each other once and the police had been called on that occasion. Mother denied Victor Z. had ever struck her children. Mother claimed that, on the night of Adan's death, they had been doing laundry. Victor Z. took Adan outside while mother folded laundry and, a short while later, ran into the laundromat and stated Adan was unconscious. Victor Z. claimed he had dropped the minor accidentally, Adan had landed on his head, and never regained consciousness.

An autopsy revealed Adan's death had been caused by "multiple injuries to the abdomen area as the result of blunt force trauma." Both of the doctors present at the autopsy stated such injuries "would require a great amount of force" and were consistent with "a punch or a kick from an adult." "The injuries included a disruption of the blood vessels, lacerations and hemorrhaging . . . . There was also one fractured vertebrae (L2), and a torn liver. There was over one cup of blood in the abdomen which [the deputy medical examiner] said was approximately ¼ of the victim's blood supply. The [doctors] further indicated that death would occur minutes following the blow, and no later than one hour after" it. X-rays revealed a healed fracture of Adan's right arm. Victor Z. denied responsibility for this injury and claimed mother told him that Adan had fallen down the stairs and broke his arm.

The autopsy report concluded Adan had been the victim of battered child syndrome as demonstrated by the presence of multiple acute and chronic injuries. These injuries included a healing fracture of the L2 vertebrae which was approximately four to six weeks old, a mature healing fracture of the right humerus which was consistent with the reported history of a broken arm six months prior to death, and a periosteal calcification along the proximal humerus which was approximately one and one-half to three weeks of age. "The findings are consistent with repetitive trauma to the humerus." Adan's liver was lacerated and showed recent hemorrhaging, sections of his ileum and ascending colon showed fresh hemorrhage, and the mesentery showed evidence of hemorrhage consistent with an injury one to two weeks old.

On February 11, 1998, the juvenile court ordered the minors placed in the care of the maternal aunt.

A social study prepared for the pretrial resolution conference (PRC) on April 14, 1998, indicated Salman told the childern's social worker (CSW)

that Victor Z. had killed Adan, had struck Salman and Jasmine with his fist, and had twisted Jasmine's legs and arms. Salman said he told his mother and father about Victor Z.'s abuse. The report indicated mother had visited Victor Z. in jail since his arrest for the murder of Adan and that mother told the CSW "she is 'in love' with him." The maternal aunt advised the CSW that mother had visited Victor Z. more frequently than she had visited the minors. The father acknowledged he was not fit to care for the minors and indicated he wished them to be placed with the maternal aunt.[3]

A supplemental PRC report prepared for May 5, 1998, indicated mother told the CSW Adan broke his arm on July 27, 1997, when he fell down numerous steps in the home. Mother admitted Victor Z. had resided with mother at the time of this incident.

A CSW's report prepared for September 16, 1998, indicated mother had enrolled in parent education and domestic violence counseling and that minors and mother had commenced counseling with Teresita Morales, Ph.D., at Eastside Family Counseling Center. Morales reported mother "continues to minimize the abuse and does not appear to grasp the severity of the crime. [Mother] is beginning to confront her denial." Attached to the report were copies of sheriff's visitation logs which indicated mother had visited Victor Z. at the county jail on February 24, 28, and March 2, 3 and 16, 1998. The minor's father provided the CSW with an audiocassette containing two recorded messages from Victor Z. to mother which Victor Z. had left on mother's telephone answering machine while mother was residing temporarily with father. The CSW noted mother had attended Victor Z.'s criminal trial and met a witness who had observed Victor Z. "throw minor Adan up in the air." Mother nonetheless continued in "her wishful thinking that minor Adan's death was accidental. Mother continues to minimize the incident and states that she is confused about the whole situation [even though mother] is aware of the autopsy results. Further, she is still unsure if she plans to wait for [Victor Z.], once he is released from jail."

The report also indicated Salman had reported that Victor Z. "would hit . . . Adan with a steel stick on his head . . . ." Salman stated Victor Z. twisted their arms and legs and that Victor Z. had injured Adan's arm by twisting it. Salman stated "he told his mommy 1,000 times and 'she didn't listen.' [Salman] stated that a 1,000 times was many, many, many, many, many times."

At the adjudication on September 16, 1998, the juvenile court received into evidence: (1) the supplemental report with the autopsy report, sheriff's

---

[3]Father is not a party to this writ proceeding.

jail visitation logs and transcribed tape recorded messages; (2) the application for petition with attachments including the detention report and police reports; (3) the PRC and supplemental PRC reports with all attachments, and, (4) records of the Huntington Park Police Department, Children's Hospital, and St. Francis Hospital.

A DCFS progress report prepared for October 14, 1998, indicated the father wished the minors to be adopted by the maternal aunt and did "not want his children ever returned to their mother. He stated that their mother is very selfish and has not shown any improvement." The father described the current placement of the minors with the maternal aunt as "perfect and he couldn't ask for anything else." The father indicated he wished to waive his right to family reunification services.

The CSW indicated that, in an interview with mother on October 8, 1998, mother was "lamenting her boyfriend['s] conviction. She still doubts that he killed her son, . . ." Mother would admit only that "(maybe)" he did it. Mother stated, "I still feel something for him. I'll never forget him. It will take a long time for me to forget him." The report recommended mother be denied family reunification services.

The juvenile court sustained the petition under section 300, subdivisions (a), (b), (f), (i) and (j), and set the matter for a contested disposition as to mother.

At the hearing on the contested disposition, Donald Boger, M.D., a diagnostic radiologist, testified the fracture of Adan's L2 vertebrae was at least four to six weeks old, and such an injury required "a great deal of force" and would have been "very symptomatic in this child." Boger also noted a six-month old fracture to the right distal humerus, and an injury to the proximal right humerus which appeared to be one and a half to three weeks old. These injuries indicated "there had been multiple episodes of . . . fairly severe trauma . . . ." Boger testified the injury to the L2 vertebrae requires "severe bending of the spine to achieve . . . ." Such an injury is sometimes seen in "severe auto accidents" and it requires "severe force." The injury to the distal humerus similarly would require great force. However, Boger conceded the injury to the proximal humerus "potentially" could be caused by a fall but would be uncommon. Adan's arm injuries would have resulted in a great deal of swelling.

Victor Whitman, M.D., a forensic pathologist, ascribed Adan's death to "blunt abdominal trauma as a consequence of battered-child syndrome." Adan succumbed approximately one hour after the fatal abdominal injury.

Whitman also noted a nonfatal injury to the mesentery which was at least one week old. Whitman further found "a series of bruises and scars to the head, basically, the face and the scalp, . . ." The deceased had several bruises of different ages which indicate "a series of injuries."

Teresita Morales, Ph.D., testified mother commenced individual counseling with Morales once per week in May of 1998, and that mother had joined Morales's physical abuse group approximately one month before the disposition hearing. In counseling, Morales had attempted to address mother's "failure to protect the child, understanding the dynamics that led her to minimize and not confront the abuse, [and] self-esteem issues related to enduring the abuse." Morales testified that although mother had made "some progress," mother continued to be in denial. Morales stated that mother "has not been able to acknowledge . . . that there was abuse ongoing before the incident with Adan. She has struggled with accepting the death of Adan was murder, as opposed to an accident." Morales opined that, unless mother "works through the abuse issues," she "most likely" will become involved in other abusive relationships in the future. Mother's low self-esteem affects her ability to protect her children and she is not prepared, at this time, "to provide a safe environment for them." Morales had also counseled Salman and Jasmine since May of 1998. Salman originally expressed fear of mother but now states he "just [feels] bad, . . ." Salman has expressed feelings of helplessness in play therapy by creating "a very dangerous world which reflects . . . his . . . feelings of powerlessness and . . . not having anyone to protect him. [¶] [Morales saw] this as a direct reflection of the abuse and not being able to do anything to protect himself or his brother." Jasmine was fearful of Victor Z. but not mother. Morales testified reunification would not be in the minors' best interests at this time. Morales recommended adoption by maternal aunt.

When asked on cross-examination if Morales thought it would be detrimental to the minors to attempt reunification and have those efforts fail, Morales responded, "I don't think that would be detrimental any more so than what's already happened." Morales conceded mother had improved to some degree, but not "considerably." Morales also admitted she expected mother would make more progress, mother had been an active participant in the group setting, and the group format may help mother "confront her denial more directly, as well as develop assertiveness and communication skills." When asked when mother might have the skills necessary to protect the minors, Morales stated it was "a very difficult thing to estimate. . . . I would think maybe within a year, but that's a rough estimate."

Mother testified she no longer was involved with Victor Z. and that he had been sentenced to 25 years in state prison for the murder of Adan. Mother

admitted she had visited Victor Z. between three and five times while he was in jail awaiting trial for the murder of Adan, and that she had spoken with Victor Z. on the telephone between ten and twenty times while he was in jail. Mother claimed she had seen Victor Z. strike Salman with a belt only one time. However, on that occasion Victor Z. struck Salman several times and Salman "had a number of marks." Thereafter, mother told Victor Z. to discipline the minors with time-outs and not to hit them. However, after this incident, mother allowed Victor Z. to be alone with the minors because she trusted him and he promised he would not strike them again.

Mother denied Salman had ever reported any abuse by Victor Z. Mother testified she had completed a parenting class and a domestic violence prevention class in October of 1998 and that she had accepted the fact that Victor Z. had murdered Adan but "it has been difficult." Mother testified she believed counseling had helped her and she had no intention of having any type of relationship with Victor Z. again.

After hearing extensive argument from counsel, the trial court indicated that, if it found mother came within section 361.5, subdivision (b)(4) and (6), "it seems . . . that it would be irrelevant whether the mother would benefit from services . . . . [These] sections focus on the children and whether . . . it would be in the best interest of the children, under those particular circumstances, to order family reunification services." The juvenile court noted the testimony and the other evidence before the court demonstrated mother's "general reckless disregard for the welfare of the minors." The juvenile court found mother's neglect had contributed to the death of Adan based on the presence of "old, as well as fresh, injuries which would have been symptomatic, and then add that to the statements of [Salman] who indicated that he had pleaded with the mother a number of times with respect to the acts that were occurring at the hands of [Victor Z.], the circumstances of the death and the mother's knowledge [which created] the dangerous situation these children were placed in. [¶] This rises to a level of criminal neglect. And I can only express surprise that the mother was not additionally charged for the murder in this case. [¶] So, therefore, the court does find, by clear and convincing evidence, that the minors fall within section 361.5, subdivision (b)(4) and (6)."[4]

The juvenile court then considered whether family reunification services would be in the best interests of the minors and concluded "all the evidence

---

[4]Section 361.5, provides, in part: "(b) Reunification services need not be provided to a parent or guardian described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (4) That the parent or guardian of the minor has caused the death of another minor through abuse or neglect. [¶] . . . [¶] (6) That the minor has been adjudicated a dependent . . . as a result of . . . the infliction of severe physical harm . . . by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the minor to pursue reunification services with the

is quite to the contrary. The expert testimony is that the best interest of the minors are served by stability in their lives, [and] there is someone willing to provide that stability at this particular point in time." The juvenile court noted Salman had expressed a desire to remain with maternal aunt and the juvenile court had taken that into consideration. The juvenile court stated it was appropriate to consider "what has occurred in the past" in determining the best interests of the minors and in this case mother had demonstrated a "total and complete disregard for the minors' welfare." The juvenile court found, "under section 361.5(b)(6), . . . that it would not benefit the minors to pursue reunification services with the mother and . . . , by clear and convincing evidence, that . . . it's not in the best interests of the minors to pursue reunification services."

The juvenile court directed DCFS not to provide family reunification services and set the matter for a hearing under section 366.26 on February 24, 1999.

## CONTENTIONS

Mother contends the evidence does not support the finding she caused the death of Adan within the meaning of section 361.5, subdivision (b)(4), or that the denial of family reunification services would be in the minors' best interest.

## DISCUSSION

1. *The record supports the juvenile court's finding that mother's neglect caused the death of Adan.*

Mother contends the evidence demonstrated that Adan's death was caused by abdominal injuries sustained while Adan was in the custody of Victor Z.: mother testified Adan had not previously exhibited symptoms of abuse, and Salman never told her Victor Z. had been physically abusive; and the older injuries found in the autopsy could have been caused by accidental falls. Mother concludes DCFS failed to show, by clear and convincing evidence, that mother caused Adan's death within the meaning of section 361.5, subdivision (b)(4).

This claim is meritless. Section 361.5, subdivision (b), permits denial of family reunification services "when the court finds, by clear and convincing

offending parent or guardian. [¶] . . . [¶] A finding of the infliction of severe physical harm, for the purposes of this subdivision, may be based on, but is not limited to, deliberate and serious injury inflicted to or on a minor's body, . . . by an act or omission of the parent or guardian, or of another individual or animal with the consent of the parent or guardian; . . . or any other torturous act or omission which would be reasonably understood to cause serious emotional damage."

evidence, . . . [¶] . . . [¶] (4) That the parent or guardian of the minor has caused the death of another minor through abuse or neglect." In this case, the juvenile court determined that mother's neglect rose to a level of criminal culpability and that mother should have been prosecuted with Victor Z. for Adan's death. The evidence supports this conclusion. The expert evidence indicated Adan's chronic injuries would have caused symptoms and pain which would have been obvious. Additionally, Salman reported to the CSW that he repeatedly told mother about Victor Z.'s abuse but she did nothing to stop it. In sum, on this record, mother's claim of insufficient evidence to support the finding under section 361.5, subdivision (b)(4), borders on frivolous.

*2.   Substantial evidence supports the juvenile court's finding that provision of family reunification services would not be in the best interests of the minors.*

Mother contends the evidence does not support the juvenile court's finding that denial of family reunification services was in the best interest of the minors. Mother asserts the juvenile court failed to apply the factors cited in section 361.5, subdivision (h), and relied instead on mother's general reckless disregard for the welfare of the minors.[5] Mother claims the juvenile court improperly focused on mother's past conduct without considering whether the minors could be returned to mother during the reunification period. Mother also claims the juvenile court erroneously believed it was not relevant to consider if mother would benefit from family reunification services. Mother argues the juvenile court thus ignored the possibility that appropriate services might help mother overcome the deficiencies which had resulted in the detention of the minors. (*In re Rebekah R.* (1994) 27 Cal.App.4th 1638, 1651 [33 Cal.Rptr.2d 265].)

Mother asserts this case is factually similar to *In re Rebekah R.*, in which the denial of family reunification services to a parent was reversed on appeal because there was no evidence appropriate services would not be sufficient to permit the parent to reunify with the minor. Mother asserts the juvenile

---

[5]Section 361.5, subdivision (h) provides: "In determining whether reunification services will benefit the minor pursuant to paragraph (6) or (7) of subdivision (b), the court shall consider any information it deems relevant, including the following factors: [¶] (1) The specific act or omission comprising the severe sexual abuse or the severe physical harm inflicted on the minor or the minor's sibling or half-sibling. [¶] (2) The circumstances under which the abuse or harm was inflicted on the minor or the minor's sibling or half-sibling. [¶] (3) The severity of the emotional trauma suffered by the minor or the minor's sibling or half-sibling. [¶] (4) Any history of abuse of other children by the offending parent or guardian. [¶] (5) The likelihood that the minor may be safely returned to the care of the offending parent or guardian within 18 months with no continuing supervision. [¶] (6) Whether or not the minor desires to be reunified with the offending parent or guardian."

court in this case similarly refused to consider mother's ability to benefit from services. Mother claims the evidence demonstrates she would have benefited from services and thus it must be assumed there is a likelihood the minors might be returned safely to mother within 18 months. Mother points out Morales testified mother might have the necessary skills within one year and that her progress might accelerate with involvement in group therapy. Mother asserts her testimony at the disposition hearing indicated progress in that she believed counseling had helped her, she had accepted the fact that Victor Z. had murdered Adan, she did not intend to continue a relationship with Victor Z., and she realized at the criminal trial that Victor Z. was lying.

Mother also claims the trial court gave undue weight to the interest in stability for the minors and notes Morales testified family reunification services would not be any more detrimental to the minors than what already had happened to them. Mother asserts the juvenile court failed to consider factors 4 and 5 under section 361.5, subdivision (h), which address the history of abuse by mother and the likelihood the minors could safely be returned to mother within 18 months.

Mother's assertion is meritless. Section 361.5, subdivision (c), directs that a juvenile court "shall not order reunification for a parent or guardian described in paragraph . . . (4) [or] (6), . . . of subdivision (b) unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the minor." The factors found in section 361.5, subdivision (h), are relevant only when the juvenile court seeks to determine whether reunification services should be denied under section 361.5, subdivision (b)(6). Thus, even assuming for the sake of discussion the juvenile court erroneously failed to consider the factors in section 361.5, subdivision (h), that purported omission would affect only the denial of services under section 361.5, subdivision (b)(6). Because the asserted error would have had no impact on the propriety of the denial of services under section 361.5, subdivision (b)(4), the error must be seen as harmless in this case.

Moreover, contrary to mother's claim, the record indicates the juvenile court did consider all relevant factors and concluded family reunification services were not in the best interest of the minors. The juvenile court addressed the first two factors under section 361.5, subdivision (h), by making repeated reference to the severity of the abuse inflicted on the minors and mother's "total and complete disregard for the minors' welfare." The third factor, emotional trauma suffered by the minors, was addressed by Morales's testimony, which indicated Salman had experienced great distress as a result of being unable to protect Adan from Victor Z. The fourth factor, history of abuse of other children by the offending parent or guardian,

clearly was considered in this case. Indeed, the juvenile court found mother had been guilty of criminal neglect in the death of Adan. Regarding the fifth factor, the likelihood the minors may be safely returned to mother within eighteen months with no continuing supervision, Morales testified mother might be in a position to protect the minors within one year but it was difficult to predict such things and mother had not improved "considerably" in counseling. Finally, as to the sixth factor, whether the minors wished to be reunified, the juvenile court expressly noted Salman had requested to remain with maternal aunt and Jasmine had expressed no opinion on the subject.

In sum, the record discloses the juvenile court considered each of the factors contained in section 361.5 subdivision (h).

Mother's reliance on *In re Rebekah R.* is misplaced. In that case the juvenile court failed to comply with section 361.5, subdivision (i), which requires the court to state on the record the facts underlying its determination the minor had suffered abuse within the meaning of section 361.5, subdivision (b)(6). No similar deficiency appears here.

In sum, mother's claim of error fails.

### DISPOSITION

The petition is denied.

Croskey, J., and Aldrich, J., concurred.